Thank you, Your Honor. John Williams appearing on behalf of appellants. I'd like to reserve five minutes of my time for rebuttal, but before I do, can the court hear and see me okay? We can. Thank you very well. I'd like to use my time this morning to put a finer point on a few key issues in this appeal, and I'm going to start by discussing the oral form selection agreement, as it should be dispositive of the jurisdictional issues in dispute. Now, in this record, substantial evidence supports an oral form selection agreement reached between Airbus and Yeager. That evidence, in the form of Victoria Yeager's sworn and unrebutted declaration, confirms paragraph 23 of the operative First Amendment complaint alleging that Airbus's CEO, Tom Enders, agreed that any disputes, including those arising out of the parties' negotiations or conduct of an endorsement deal, would be litigated in California. That form selection agreement was further consistent with a related choice of law agreement also made in favor of California, which appeared in a written deal memo arising from the Yeager's negotiations with Enders. While Airbus now claims that oral form selection agreement is uncorroborated, this court previously found in Harris-Retzke that unless directly contravened, the plaintiff's version of the facts is taken as true for purposes of evaluating a prima facie case for personal jurisdiction. Here, the only person who could directly contravene Victoria Yeager's declaration was Enders, who other Airbus executives also acknowledged had the ultimate authority on that issue. Enders ostensibly had the ability to file a declaration contravening the existence of that oral form selection agreement, but tellingly in that oral agreement. Negotiations of an endorsement deal involving General Yeager after visiting Airbus facilities, flying Airbus aircraft, and giving recorded presentations to Airbus employees. While an endorsement deal was never ultimately reached, Airbus proceeded to use those recordings of General Yeager in a sales video and showcased General Yeager's name in the promotional statement published to Airbus' website. Thus, the party's oral form selection agreement should govern their dispute. So how is that the conduct of an endorsement deal, if the claim is really one of violation of the rights of publicity? Well, the negotiation of the terms and conditions of that endorsement deal were covered by that agreement as well as the party's conduct through that endorsement deal. And here we have Airbus acting as though there was an endorsement deal, but without agreeing to the compensation that General Yeager requested. So the idea that Enders proposed was that the agreement would encompass not only the negotiations, excuse me, themselves, but the party's conduct consistent with any endorsement deal that they may have reached. And here that was clearly in violation of what the parties agreed to. With Airbus using General Yeager's name and without providing the corresponding compensation that he required as part of that negotiated deal or attempt to negotiate that deal. I want to touch on the district court's finding that the oral form selection clause could not be enforced because of the statute of frauds. I think we made clear in our briefing that the statute of frauds does not apply here because this agreement did not require performance within a year. There was no minimal time period included in the party's form selection agreement. And in fact, it could have been performed within a year. So under California law, there is no statute of frauds issue under civil code section 1624. I would suggest that if this court has any misgivings about the existence of that form selection agreement, it should recognize that it presents a factual dispute and at minimum should remand for an evidentiary hearing to determine whose version of facts is correct. The council, this is Judge Schroeder. I just want to make sure I'm clear on this. What is the language of the form selection clause that you say they agreed to? Was it broader than any disputes that might arise from the negotiation of or conduct of an endorsement deal? Was it broader than that? The language that you have used is the language, I believe, at paragraph 24 of the operative complaint. And I think when you look at that in conjunction with paragraph seven of Victoria Yeager's declaration, that it was the nature of the agreement was that any disputes arising out of the negotiation or conduct of the parties if they reached an endorsement deal. So the idea was that anything having to do with the negotiation of this agreement or reaching the agreement and then a dispute arising out of that reached agreement would be litigated in California. Well, I thought that we had law that disputes that arise out of an agreement apply only to the disputes relating to the interpretation and performance of that agreement. And if there was never any agreement, I'm having trouble understanding how the parties had a forum selection agreement. So your question is, is only if there was an actual agreement with that forum selection, oral forum selection agreement applied to the dispute? Yeah, normally a forum selection clause in a contract applies to disputes arising out of that contract. So you must be arguing that this forum selection agreement was broader than that. I'm sorry, go ahead. Oh, no, go ahead. And am I misunderstanding? No, I think that I am arguing that it arose out of the party's negotiations of that forum selection agreement and that that was encompassed in that agreement. That's what was alleged and that's what was confirmed by Ms. Yeager's declaration. And so even though an agreement was ultimately not reached, the actions of Airbus were implicated by the negotiations and what it was that the parties were negotiating and what Airbus agreed it would and would not do absent the agreement from General Yeager. Well, then what is the relationship between the footage that was used in the video and the negotiations? The relationship between the footage is that this was part of what was being negotiated, this idea that General Yeager would endorse Airbus products and that the footage itself would be used only if an agreement had been reached. And that was part of the negotiations that General Yeager agreed to be filmed, but that the footage would only be used for internal purposes unless the negotiations resulted in an agreement by which an endorsement fee would be paid to General Yeager. Okay, so the footage is part of the negotiations? Is that essentially your argument? Well, I think it arises from the negotiations. I wouldn't say it's directly related to the subject matter of the negotiations. This was what, in fact, they were negotiating, the terms of an endorsement deal, the use of the footage, the use of General Yeager's name and likeness. And at the time that this was being negotiated, the agreement was that this footage could only be used internally unless this agreement, the endorsement agreement was ultimately consummated, which it wasn't. Thank you. So you're saying there are two agreements. There's an agreement not to use the video while negotiations are taking place, and there's an agreement as to what the conduct of the party should be if an endorsement deal is made. Yes, and the agreement was that there would, that any disputes arising out of any of those negotiations as to the terms of that agreement, including the use of the video, including a compensation to General Yeager for use of his name and likeness, would all be subject to litigation in California in that forum. So all of those things are directly related to the ultimate purpose of those negotiations, which was to see if the parties could reach an endorsement deal. And they were moving forward with those negotiations at the same time that General Yeager is visiting Airbus facilities in Europe and being filmed with the idea that, again, you cannot use General Yeager's footage of General Yeager unless this agreement and these negotiations ultimately consummated in an agreement for the use of his name and likeness in an endorsement deal. You're down to about four minutes and 30 seconds. Do you want to reserve? I would. I would like to just move quickly before I do reserve that our position is outside of the oral agreement, the oral agreement to resolve the disputes in California. Under this court's established authority, we've also argued alternatively that Airbus purposely directed its activities towards California, reached into California, communicated with General Yeager in California, and did so with the idea of ultimately drawing General Yeager outside of California, both arranging and paying for his travel to Airbus locations located elsewhere in the United States and in Europe. And I know we briefed those issues, but I just underscore that that's an alternative basis that we've argued for jurisdiction in this case. And with that, I'll reserve the balance of my time. Thank you, counsel. Thank you, May. Please support Douglas Winthrop from Arlen Porter on behalf of the Airbus entities. I'd like to reserve three minutes. Could you keep your voice up, please? Sure. I'd like to reserve three minutes to talk about the fees issue at the end. In June of 2017, the CEO of a French company spoke at the Paris Air Show about a European-focused helicopter project being undertaken as part of the European Commission development program. In that presentation at the Paris Air Show, the CEO of this company mentioned General Yeager having broken the sound barrier 70 years earlier. That was then published on led to this lawsuit. There is no debate that the plaintiffs, the appellants, need to have a plea and show jurisdiction as to all the claims that they assert. And they assert two bodies of claims, claims related to that 2017 website statement and claims relating to the video which Mr. Williams has just been talking about. As to the website statement, the appellants don't even make an argument before this court as they did in the district court that the website somehow targeted California, that there was independent jurisdiction over this website statement. What they argue here is that the court should use pendant personal jurisdiction to take jurisdiction over those claims, conceding there's no independent basis for jurisdiction. The court should reject that argument. It wasn't raised below. It wasn't raised to this point. The court said in action embroidery on which the appellants rely, pendant personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with a federal or state claim where there isn't nationwide personal jurisdiction. And on that type of claim, this court has said it's appropriate, the district court has the discretion to take jurisdiction of a claim where there's no personal jurisdiction independently available. Why? Because there's going to be a federal suit, we might as well have all the claims in one. But here that doesn't apply. There is not, there's no claim here that has nationwide personal jurisdiction. Second, the doctrine only applies when you have claims that have a common nucleus of operative facts. Here, the relevant facts are distinct and separated by nearly a decade. One relates to an alleged video made allegedly in 2008 in France. The other relates literally to a comment about a public event, General Yeager is breaking the sound barrier, made in 2017. So why do I start there? Why does this matter? The allegations about this video are extremely sparse to quote the district court. And I believe they're almost certainly time barred. They're quite sparse and probably time barred. The district court was correct to dismiss them on personal jurisdiction grounds. But if you disagree, we suggest it would be inappropriate to go further and use those as the hook upon which to hang this website claim, which is about a French executive making a statement in France about a European program that's published on a globally accessible website. So let me then, that takes care of the 2017 website. Let me turn to the video claims. And I was going to start with purposeful direction. That's how the plaintiffs filed the case in the opening brief. You may notice the plaintiff, the appellants switched in their reply brief to focus as their main argument being this alleged forum selection clause. So I'll start there. The argument that there was a freestanding, uncontradicted oral forum selection clause that existed apart from the writings that Mrs. Yeager had with Airbus executives is contradicted by Mrs. Yeager's declaration. And I'll ask you to look at paragraph seven of her declaration, which is excerpts of record 485. Mrs. Yeager says that she proposed the California venue selection and Mr. Enders agreed. In the very next sentence, she writes, I later stated this in an email to Christoph Ehrhardt. And attached here too is exhibit A are the emails. It was Mrs. Yeager who provided sworn testimony that the alleged venue selection agreement is described in her written communications to Airbus executives. That's why the district court looked at those writings. And what it found is that in fact there is no such agreement described. Mrs. Yeager had proposed a California choice of law clause for the terms of General Exhibit to Europe, which was not accepted. And a U.S. venue, not a California venue, for that visit, which also was not accepted. And her emails say nothing about there already being a oral venue agreement between her and Tom Enders. And even if there were such an agreement, the questions that you were raising say that it doesn't cover, it only covers the negotiation or conduct of an endorsement deal. It's undisputed there was no endorsement deal. And the claims in here in no way relate to the negotiation of such a non-existent deal. What you heard from counsel is a lot of general statements. If you go to the facts and go to the record and go to the evidence and go to Mrs. Yeager's declaration, none of that is supported. According to the facts alleged by Mrs. Yeager, they had negotiations over an endorsement deal in Nevada. They were all in Nevada. And then they also had this agreement to go in 2008 for this one-shot deal to go to Airbus. I would also ask you to look in this whole idea that Airbus somehow reached into California and extracted Mr. Yeager out of California to go to Europe. If you look at the actual facts and look at the emails again, could you direct me to the past? Right now? Yes. If you look at, if you go to 491 and 92 of the excerpts of records, and you read that email exchange, what you will see even on this speaking agreement, to go to Airbus and speak at the facilities, Airbus did not even pay for Mr. Yeager to come to Europe. The agreement, if you look at that exchange, says Airbus is going to pay for his travel in Europe. And then if they have to cancel, it says, they will compensate him for extra costs he has to pay for canceling his airfare, his travel arrangements to Europe. There is a claim here that your client used footage of his image in order to benefit themselves and they didn't have permission. And that's a serious and possibly viable claim. So where should he sue, or his widow sue? That would have to be brought in France. Only in France? Yes. Well, one, there is no evidence that this alleged video had any connection anywhere to California. That's what Judge Dayton found. And there's not a single fact, whether where it was made, where it was distributed, where it was shown. Well, I understand that. I understand your negative argument. Yes. But this is a video that I thought was claimed to have been broadly seen and broadly viewed. No. You say that's not correct. Yes. If you go to the declaration, again, Mr. Williamson came as an appellate counsel. If you go to the actual facts in the district court, what we have are Mrs. Yeager's declarations. What she says is that in 2012, an Airbus employee, not necessarily inconsistent with internal use, an Airbus employee said he was pleased and saw Mr. Yeager in some video. And that was 2012. And there's no allegation as to what he saw, where he saw it, or anything. And then that's where this was left. And they're not entitled to any discovery to find out? No, because the judge said, what is the basis for any claim here that ties this video to any of these defendants? And the district court judge has a lot of discretion here. And the district court judge asked him several times, give me something. Tell me something that shows you have done the minimum to sue some people on this alleged video. And they've got nothing. And I would suggest to you, this is why I started where I did with the 2017 website statement. This suit was brought because of this website statement. And when they went around to suing, they threw in this claim literally from, the statement that Mrs. Yeager received was in 2012. And they added that to this complaint. And this issue now is a bit of a tail wagging the dog of this case. But the judge looked at this, bent over backwards, gave them many, many opportunities, said that oral, Judge Staten said an oral argument, give me something. Do you have any facts? And they said, we've got nothing. Well, actually, in her affidavit, she talks about numerous press releases concerning use of helicopters, for example, in California. There's nothing related to this case. Correct. But we're talking about, are you purposely trying to engage the jurisdiction? So, I mean, when you say nothing, I think you're exaggerating. Your Honor, I'm referring to anything related to this case. There is nothing related to the claims in this case that they use Mr. Yeager's name or anything related to any of the allegations in the case. That's my point. They do business. They do business in California. Yes. You're getting close to three minutes. Do you want to get to your fee issue? Yes. Thank you for that, Your Honor. The district court, we believe, erred in denying fees here. The Airbus entities achieved a complete victory in the case. The action was dismissed without leave to amend. An appellant's effort to sue the Airbus entities in the Central District was completely rejected. It failed completely. The district court declined to award Airbus fees because it held under the 3344, the right of publicity statute under California law, under Varney Entertainment, that we were not eligible for fees. But there, the plaintiff had voluntarily withdrawn their claims. There was no order dismissing the claims. And in that case, the Court of Appeals said, you're not a prevailing party under 3344. The district court judge also relied on CRST, California's, the U.S. Supreme Court's prevailing fees ruling. Prevailing party ruling on fees. And what she said, what the district court judge said, is that in that case, that case tells us that you can't be a prevailing party because the case could be brought in another form. It didn't preclude another suit by the Yeagers. But actually, if you look at CRST, not only did the case not so hold, it expressly left that question open. And if you look at page 434 of the decision, you'll see that the court left that open. And then I wanted to, in the short time I have left, the other issue, if you look at this from a practical perspective and say, is it possible that this case could be brought again in another form? The judge made an error as well there because she said, well, you're saying the claims are time barred. I never reached whether the claims are time barred. But that wasn't our argument. Of course, the claims were not time barred. They brought them, the right of publicity claims, on the last day that they could. So we never argued those claims were time barred. We argued in our fee motion that because they brought them on the last day they could, any future claims would be time barred. And so from a practical perspective, there's no way that the Airbus entities could be held liable on this right of publicity claim because the statute of limitations will have expired, by now has expired, because they brought their suit on the last day. I'll reserve 50 seconds for rebuttal. Okay, thank you. I want to go back to first principles and touch upon the standards of review because I think they're important here. Council argues this case as if the standards of review were not de novo for this court looking at the jurisdictional issue, that it was as if it was bound by some standards. This court, of course, can exercise de novo review in looking at all these same facts, allegations, and circumstances and make up its own mind on the jurisdictional question. Moreover, on the issue of how... Mr. Williams, can I interrupt you for just a second? Would you direct yourself to Mr. Winthrop's point that in paragraph seven of your client's declaration, the second sentence indicates to me that the oral agreement is contained in the email which he sent. And I've been looking at that email and I don't see anything about an oral agreement regarding venue. Could you help me out on that? I think that there is a lack of precision in that email, that the agreement itself wasn't contained in the email. It was an oral agreement. What the email reflects is a related choice of law issue. And then there are some back and forth with another Airbus executive about whether Mr. Anders would agree to that as well. But she says at 485 line 15, I later stated this in an email to Christoph Erhardt. And it, I think, means the oral agreement. Yes, I agree that there's a lack of precision there when she says this. This isn't clearly, whatever this means isn't clearly elucidated in those emails. And at the time, the focus was on this additional choice of law issue. And I think that that's what is focused on with Erhardt. But the issue of whether this agreement existed was never rebutted at that time. There was never a response from anybody at Airbus that said there is no agreement with Mr. Anders. And in fact, I who has the authority and I'll have to check with him. Are you taking, are you representing that Airbus has admitted that there was an oral agreement? No, I think that this this email is circumstantial evidence of the agreement. I don't think that it was ever elucidated in this agreement or in this email exchange to such an extent that you could this is the written agreement with respect to this jurisdictional issue. I don't see any mention at all in this email of any oral agreement or any California. The word California does not appear in the email. No, there's correct. There's I think there is a reference to the dispute would be litigated in the U.S. And then there is this California choice of law, which is an additional agreement that I think is, is laid out in that email. It says no difference will be settled in the U.S. Right. But, but I don't think this email arises to the level of becoming a written forum selection agreement. And I think that what Ms. Yeager was trying to the case will be litigated if at all in the U.S. And by the way, in addition to that, here is a California choice of law issue that we also want. And Earhart responds to that and says, well, that's that's up to Mr. Enders to decide, which is consistent with our position that it was Enders that entered into the original oral agreement in 2008 with Yeager for the for the jurisdiction of California. Now, your time is expired, but we'll give you a couple of seconds to sum up. Thank you. With respect to the relationship of the sales video to California, again, we briefed this, but this court applies a but for causation standard. And under that standard, Yeager need only show that he would not have suffered the injury but for Airbus' foreign related conduct. Had Airbus not solicited General Yeager to draw him out of California, it would have never had the the video of him that it took and then later used in that in that video presentation, that sales presentation. So, again, we believe there's but for causation here, that this is directly related to the foreign related activities. And on that independent basis, this court should reverse and find the jurisdiction is with California. Thank you. Unless there's further questions, I'll submit. Thank you. We'll hear your rebuttal, but limited to the attorney's fees issue. What's that? We'll hear your rebuttal, but limited to the attorney's fees issue because that's the cross. Yeah. We would suggest that the Airbus entities won this case. The parties would not be fighting this hard if forum didn't matter. And this cost quite a bit of money. We put in the record the record evidence of the appellant's prior history in these kinds of cases and the fact that other courts have actually held that, you know, there's an issue of deterrence here of bringing claims against with no basis and kind of suing people without really any grounding in who you're suing and why. And we think if you think about why shouldn't, why shouldn't we get our fees here? What the court in CRST was taking a view that we should be practical and we should not use formalisms. And they moved away from those. And if you look at this case, we suggest an award of fees is proper and appropriate and serves the purposes of the reason why there are possible awards in both the Lanham Act and the right of publicity statute. So thank you. Thank you, counsel. The case just argued will be submitted for decision and we'll proceed to the next.
judges: SCHROEDER, THOMAS, BEA